**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

FILED
U.S. DIST. COURT
BRUNSWICK DIV.

2005 JUL -6 A 9: 56

CLERK _____
SO. DIST. OF GA.

WILDERNESS WATCH and
PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY,

        Plaintiffs,

vs.

FRAN P. MAINELLA, Director, National
Park Service; UNITED STATES
DEPARTMENT OF THE INTERIOR;
JERRE BRUMBELOW, Superintendent,
Cumberland Island National Seashore;
and GREYFIELD INN, CORP.,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.: CV202-093

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Plaintiffs filed a Motion For Attorneys' Fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Fran P. Mainella, Director, National Park Service; United States Department of the Interior; and Jerre Brumbellow[1], Superintendent, Cumberland Island National Seashore ("Defendants") filed an "Opposition." Plaintiffs filed a Reply to which Defendants filed a Response. Pursuant to the Court's April 5, 2005 Order, Plaintiffs filed a Supplement to their Motion. Defendants filed a Response. Plaintiffs are seeking fees and costs in the amount of $345,229.32, at the market rate, and $225,876.62, at the COLA rate[2].

---

[1] When this case was filed, Arthur Frederick was named as a Defendant because of his position as the Superintendent of the Cumberland Island National Seashore. Since that time, Jerre Brumbellow has assumed the position of Superintendent. (Dkt. No. 125, p. 1 n.1.)

[2] "COLA rate" refers to the EAJA's statutory cap with a cost of living increase.

On February 11, 2002, a case was filed in the United States District Court for the District of Columbia ("District of Columbia"). Wilderness Watch v. Mainella, 1:2002 CV 278 (2002). After determining that an indispensable party[3] had not been named, the case was dismissed, and Plaintiffs filed the instant action. In the Complaint filed in the case *sub judice*, Plaintiffs alleged that the National Park Service ("Service"): (1) conducted motorized tours to the Plum Orchard historic district, in violation of the National Environmental Policy Act ("NEPA") and the Wilderness Act, 16 U.S.C. § 1131 *et seq.* ("Plum Orchard claim"); (2) conducted motorized tours to the Settlement historic district, in violation of the NEPA and the Wilderness Act ("Settlement claim"); (3) executed an agreement with local persons, entities, and organizations to permit these tours, in violation of the Federal Advisory Committee Act ("FACA") ("FACA claim"); and (4) permitted Greyfield Inn, Corp. ("Greyfield Inn") to conduct motorized tours, in violation of the NEPA and the Wilderness Act ("Greyfield claim").

The parties filed cross motions for summary judgment. This Court held that the Plum Orchard claim was moot and that Defendants did not violate the FACA, Wilderness Act, or NEPA. The Greyfield claim was remanded to the Service for further consideration.[4] On appeal, the Eleventh Circuit Court of Appeals ("Court of Appeals") reversed this Court's holding that the Service's tours to the Settlement did not violate the NEPA and Wilderness Act and affirmed the Court's holding that the Plum Orchard claim was moot. The Court of

---

[3]The indispensable party was Greyfield Inn, Corp.

[4]The issue was remanded to the Service "for a decision as to the scope of Greyfield's existing private rights and further action as necessary to regulate whatever commercial use, if any, is allowable within the scope of those rights." (Dkt. No. 86, p. 9.)

2

Appeals did not address Plaintiffs' FACA or Greyfield claims. <u>Wilderness Watch v. Mainella</u>, 375 F.3d 1085 (11th Cir. 2004).

Plaintiffs contend that, as the prevailing parties, they are entitled to attorneys' fees and costs. (Dkt. No. 115, pp. 2-4.) Additionally, Plaintiffs assert that Defendants bore the burden of establishing that the Service's position was "substantially justified," and they failed to make this showing. (<u>Id.</u> at pp. 6-8.) Next, Plaintiffs aver that this Court should allow an upward enhancement of the EAJA's statutory cap. (<u>Id.</u> at pp. 14-18.) Finally, Plaintiffs contend that if this Court should conclude that they are not entitled to an upward adjustment, they should be given a cost of living increase. (Dkt. No. 115, pp. 19-20.)

Defendants assert that Plaintiffs' motion should be denied or, in the alternative, the award to Plaintiffs should be greatly reduced. (Dkt. No. 119, p. 4.) Defendants contend that Plaintiffs' request far exceeds the amount allowable under the EAJA. (<u>Id.</u> at p. 16.) Defendants further contend that Plaintiffs are not entitled to recover fees for work performed on their unsuccessful claims or work associated with the case filed in the District of Columbia. (<u>Id.</u> at pp. 8-14.) Also, Defendants aver that Plaintiffs are not entitled to an hourly rate greater than the EAJA's statutory cap, compensation for excessive charges, or compensation for redundant and unnecessary work. (<u>Id.</u> at pp. 21-24.) Defendants conclude that if this Court grants Plaintiffs' motion, the fee request should be reduced to reflect that Plaintiffs were not successful on a majority of their claims. (<u>Id.</u> at pp. 14-16.)

Plaintiffs' motion consists of claims for fees incurred in filing the case in the District of Columbia, in addition to the claims for fees and costs incurred in litigating the case

AO 72A
(Rev. 8/82)

before this Court, appealing this Court's decision to the Court of Appeals[5], and filing the instant motion.

## DISCUSSION AND CITATION TO AUTHORITY

"[E]ach party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937, 76 L. Ed.2d 40 (1983)(citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed.2d 141 (1975)). Pursuant to the EAJA, the prevailing party is entitled to attorneys' fees and costs. Commissioner, I.N.S. v Jean, 496 U.S. 154, 158, 110 S. Ct. 2316, 2318, 110 L. Ed.2d 134 (1990). The EAJA provides:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (2005). To file a claim pursuant to the EAJA, an applicant must: (1) establish that they were the "prevailing party"; (2) show that they are eligible for an award by alleging that they are an organization with a net worth that did not exceed $7,000,000 and did not have more than 500 employees at the time the civil action was filed; (3) provide an itemized statement reflecting the time expended and the rate at which fees and other expenses were computed; and (4) allege that the position taken by the

---

[5]By Order dated November 9, 2004, the Court of Appeals held that Plaintiffs were entitled to appellate attorneys' fees and expenses. The Court remanded the case for this Court to determine a "reasonable" award. (Dkt. No. 118.)

4

government was not "substantially justified." 28 U.S.C. § 2412(d)(1)(B); 28 U.S.C. § 2412(d)(2)(B); Singleton v. Apfel, 231 F.3d 853, 857 (11th Cir. 2000).

The parties agree that Plaintiffs are eligible organizations under the EAJA, and Plaintiffs have provided the Court with itemized statements. The remaining elements of a claim filed pursuant to the EAJA will be addressed herein.

### I. Prevailing Party

A party attempting to obtain fees and expenses under the EAJA must show that they were the "prevailing party." Jean, 496 U.S. at 158, 110 S. Ct. at 2319. The "prevailing party," otherwise known as the "successful party," is a party that "has been awarded some relief by the court." Buckhannon Board and Care Home, Inc., v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 603, 121 S. Ct. 1835, 1839, 149 L. Ed.2d 855 (2001).

Plaintiffs assert that because they achieved their overall goals, they were the prevailing parties in this case. (Dkt. No. 115, pp. 2-4.) Defendants allege that Plaintiffs were not the prevailing parties in the case filed in the District of Columbia or on the Plum Orchard and FACA claims. (Dkt. No. 119, pp. 6-8.)

### A. Plum Orchard Claim

A party may be considered to be "prevailing" when there is a "voluntary cessation of the unlawful practice by the defendant, or other mooting of the case where the plaintiff has vindicated his right." Doe v. Busbee, 684 F.2d 1375, 1379 (11th Cir. 1982).

Plaintiffs contend that they were the prevailing parties on the Plum Orchard claim because they challenged the legality of the tours to Plum Orchard on the same basis as

5

their successful Settlement claim. Specifically, Plaintiffs aver that the Plum Orchard and Settlement claims "were based on the same law, arose from the same unlawful agency decision, and were based on the same set of operative facts." (Dkt. No. 124, p. 7.) The only difference between the two claims, Plaintiffs assert, is that the Service voluntarily ended the tours to Plum Orchard. Finally, Plaintiffs contend that a finding that they are not entitled to attorneys' fees on the Plum Orchard claim would be inconsistent with the Court of Appeals' decision. (Id. at pp. 7-8.)

Defendants assert that Plaintiffs should not be allowed to recover fees and costs relating to the Plum Orchard claim because that claim does not share a common core of underlying facts or legal theory with the Settlement claim. Defendants also assert that this Court and the Court of Appeals both determined that the Plum Orchard claim was moot, and as such, Plaintiffs did not prevail on this issue. (Dkt. No. 119, pp. 13-14.)

In February 1999, the Service signed an agreement which authorized motorized tours to Plum Orchard. In September 2002, after the case *sub judice* was filed, the tours to Plum Orchard were voluntarily discontinued. The tours ceased before this Court could address the legality of those tours. In light of the Service's voluntary cessation of the tours to Plum Orchard, this Court and the Court of Appeals determined that the Plum Orchard claim was moot. Plaintiffs' overall goal was to end the motorized tours on Cumberland Island, and Plaintiffs were successful in ending the motorized tours to Plum Orchard. Plaintiffs were the prevailing parties on this issue.

6

**B. FACA Claim**

In Hensley v. Eckerhart, 461 U.S. at 424, 103 S. Ct. at 1933, the Supreme Court considered whether a court's failure to address a particular claim was fatal to the prevailing party's attempt to recover for time spent on that claim. The Court noted that although plaintiffs may have presented different claims for relief, these claims often involve a common core of facts or are based on related legal theories. Id. at 435, 103 S.Ct. at 1940. In such cases, a large portion of the attorneys' time is devoted to the litigation as a whole, and the lawsuit should not be viewed as a series of discrete claims. Id. Rather, the court should focus on the significance of the overall relief obtained by the plaintiffs. Id.

Although the Court of Appeals did not address their FACA claim, Plaintiffs contend that they were the prevailing parties on this issue. Plaintiffs assert that this Court must evaluate the case as a whole, and viewed as a whole, they were successful. Namely, Plaintiffs aver that they were successful in getting a judicial finding that the Service's motorized tours on Cumberland Island were unlawful. (Dkt. No. 124, pp. 6-7.)

Defendants assert that because this Court ruled in their favor and the Court of Appeals declined to address Plaintiffs' FACA claim, Plaintiffs were not the prevailing parties on that issue. Additionally, Defendants aver that Plaintiffs' FACA claim did not share a common core of facts with Plaintiffs' successful Settlement claim. (Dkt. No. 119, p. 14.)

On January 21, 1999, parties representing various interest groups met with the Service for the purposes of reaching an agreement regarding the use of motor vehicles on Cumberland Island. In February 1999, the Service signed an agreement which provided that they would provide regular motorized tours for the public to Plum Orchard and the Settlement. In their Complaint, Plaintiffs alleged that the January 21, 1999 meeting and

7

subsequent agreement violated the FACA. This Court determined that the Service's actions did not violate the FACA. The Court of Appeals declined to address that claim, holding that

> [b]ecause . . . the Park Service's decision to transport tourists through wilderness areas was made in violation of NEPA, we do not reach the question of whether the decision-making process also violated the procedural requirements of the Federal Advisory Committee Act[.]

Wilderness Watch, 375 F.3d at 1096 n.12.

Plaintiffs achieved their goal of ending the motorized tours on Cumberland Island. Thus, the fact that the Court of Appeals did not specifically declare the Service's agreement to provide tours and the procedure by which that agreement was made to be in violation of the FACA is not determinative. Moreover, Plaintiff's Settlement claim, their undisputed successful claim, and the FACA claim were both premised on the fact that the Service's motorized tours violated federal laws designed to protect the undisturbed nature of the island. Specifically, the Settlement claim addressed whether the Service's tours to the Settlement were unlawful, and the FACA claim addressed whether the agreement between the Service and other parties to conduct those tours was unlawful. Plaintiffs were the prevailing parties on this issue.

### C. Preliminary Injunction

The Supreme Court has held that a court's rejection of or failure to address a specific legal claim does not preclude the plaintiff from recovering fees attributable to that issue. Hensley, 461 U.S. at 435, 103 S. Ct. at 1940. Rather, the Supreme Court held that a court's focus should be on the result obtained. Id.

AO 72A
(Rev. 8/82)

Although this Court did not grant their motion for a preliminary injunction, Plaintiffs assert that they are entitled to fees and costs associated with the filing of that motion. Specifically, Plaintiffs contend that the issue is not whether they succeeded on that specific motion, but rather, whether they were the prevailing parties in the case as a whole and achieved their desired results. (Dkt. No. 124, pp. 8-10.)

Defendants contend that Plaintiffs were not the prevailing parties on their preliminary injunction motion because the motion was never heard by this Court and was ultimately withdrawn. Additionally, Defendants aver that the amount of fees sought by Plaintiffs for time spent on their unsuccessful preliminary injunction motion is exorbitant. (Dkt. No. 119, pp. 12-13.)

On May 31, 2002, Plaintiffs filed a motion for a preliminary injunction.[6] (Dkt. No. 3.) After the motion was filed, the Service voluntarily ended their tours to Plum Orchard. On October 17, 2002, Plaintiffs withdrew their motion for a preliminary junction.[7] (Dkt. No. 45.)

In their motion for a preliminary injunction, Plaintiffs sought, *inter alia*, an order enjoining the Service from conducting motorized tours to Plum Orchard and the Settlement. The Service stopped the motorized tours to Plum Orchard before this Court could address the legality of those tours. Plaintiffs were ultimately successful in their goal of ending the

---

[6]Plaintiffs moved for a preliminary injunction to (1) suspend a permit issued by the Service, (2) enjoin the Service from issuing a permit to Greyfield Inn to conduct commercial, motorized vehicle tours, and (3) enjoin the Service from conducting its own motorized tours (i.e. tours to Settlement and Plum Orchard). (Dkt. No. 3.)

[7]Plaintiffs' Notice of Withdrawal provides that the motion was withdrawn because the parties were working toward a resolution of the matter. (Dkt. No. 45.)

AO 72A
(Rev. 8/82)

motorized tours to Plum Orchard and the Settlement. Plaintiffs were the prevailing parties on this issue.

### D. District of Columbia Case

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses, . . . incurred by that party in any civil action . . . brought by or against the United States *in any court having jurisdiction of that action.*" 28 U.S.C. § 2412(d)(1)(A) (emphasis added). "[T]here cannot be an award of attorneys' fees unless the court has jurisdiction of the action." Hudson v. Principi, 260 F. 3d 1357, 1363 (Fed. Cir. 2001); see Zambrano v. I.N.S., 282 F.3d 1145, 1149-1150 (9th Cir. 2002) ("for a court to award fees under the EAJA, it must have jurisdiction over the underlying action"); Burkhardt v. Gober, 232 F.3d 1363, 1368 (Fed. Cir. 2001) (the EAJA language "having jurisdiction of that action" limits recovery to fees and expenses incurred before a court with the power to hear and decide the action giving rise to the fees and expenses that are the subject of the EAJA application); Lundin v. Mecham, 980 F. 2d 1450, 1461 (D.C. Cir. 1993) ("a court may not award fees under EAJA for work performed in other jurisdictions"); Lane v. United States, 727 F.2d 18, 20-21 (1st Cir. 1984) (because the court lacked subject matter jurisdiction, it did not have the power to award attorneys' fees under the EAJA).

Plaintiffs assert that they are entitled to attorneys' fees[8] attributable to the case filed in the District of Columbia case because the claims in that case and the claims in the instant case are factually indistinguishable. Moreover, Plaintiffs contend that a significant

---

[8]Costs associated with that case are not included in Plaintiffs' fee petition. (Dkt. No. 129, p. 1.)

AO 72A
(Rev. 8/82)

amount of work on the instant case was performed while the case was pending in the District of Columbia. (Dkt. No. 124, pp. 10-12.)

Defendants aver that because the Court does not have jurisdiction over the case filed in the District of Columbia, Plaintiffs are not entitled to recover attorneys' fees relating to that case. Further, Defendants contend that even if Plaintiffs could show that this Court had the requisite jurisdiction to award fees, Plaintiffs were not the prevailing parties in that case. (Dkt. No. 119, pp. 8-9.)

On February 11, 2002, the Plaintiffs[9] brought an action in the United States District Court for the District of Columbia. See Wilderness Watch v. Mainella, 1:2002 CV 278 (2002). In March 2002, the Government moved to dismiss the case or, in the alternative, transfer the case to the Southern District of Georgia. On April 25, 2002, the District of Columbia dismissed the case, finding that Greyfield Inn was an indispensable party that had not been named and was not subject to the Court's jurisdiction.

The basis of Plaintiffs' argument that they are entitled to fees for the District of Columbia case appears to be that the instant case is merely an extension of that case. The case filed in the District of Columbia and the case *sub judice*, however, are two distinct cases.[10] The case before the District of Columbia was *dismissed* before the instant case was filed. This Court lacks jurisdiction over the case filed in the District of Columbia, and as such, this Court cannot award attorneys' fees in that case.

---

[9]In addition to the Plaintiffs in this case, Defenders of Wild Cumberland, Inc., were also Plaintiffs.

[10]The two cases *do not* have the same parties or legal claims. As noted above, an additional Plaintiff, Defenders of Wild Cumberland, Inc., was involved in the case filed in the District of Columbia. Also, Greyfield Inn was not named as a Defendant in that case. Finally, Plaintiffs' FACA claim, a claim raised before this Court, was not raised in the case filed in the District of Columbia.

11

## II. Substantial Justification

The EAJA authorizes attorney's fees to the prevailing party, so long as the Government's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A); Scarborough v. Principi, 541 U.S. 401, 405, 124 S. Ct. 1856, 1860, 158 L. Ed.2d 674 (2004). "' The government bears the burden of establishing that its position is substantially justified.'" United States v. Jones, 125 F.3d 1418, 1425 (11th Cir. 1997) (quoting City of Brunswick, Ga. v. United States, 849 F.2d 501, 504 (11th Cir. 1988)). To establish that their position was "substantially justified," the Government must show that their position was "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550, 101 L. Ed.2d 490 (1988); accord Jones, 125 F.3d at 1425. In sum, the Government must establish that their position was reasonably grounded in law and fact. Pierce, 487 U.S. at 565, 108 S. Ct. at 2550; Jones, 125 F.3d at 1425.

Plaintiffs contend that because Defendants' position was clearly contrary to the plain language of the Wilderness Act, their position was not "substantially justified." Additionally, Plaintiffs aver that the Court of Appeals unanimously and unequivocally determined that Defendants' contention that the tours fell within an exception to the Wilderness Act was not reasonable. (Dkt. No. 115, pp. 7-8.)

Defendants assert that this case involved issues that were close questions of law upon which reasonable jurists could disagree. Also, Defendants aver that this case involved matters of first impression and was based upon difficult issues of statutory

12

interpretation. Finally, Defendants contend that the underlying actions of the Service were "reasonable." (Dkt. No. 125, Ex. 1.)

The Wilderness Act places restrictions on the use of land designated as "wilderness," subject to narrow exceptions. For instance, the Wilderness Act provides that there shall be "no use of motor vehicles," except as "necessary to meet minimum requirements for administration of the area." 16 U.S.C. § 1133(c) (2005).

In February 1999, the Service agreed to provide regular public access to Plum Orchard and the Settlement. The Service claimed that the trips to these sites would occur no more often than Service personnel were already going to these areas for maintenance. However, the record reveals that within two months after the trips began, the Service began purchasing vans to accommodate large numbers of passengers. Also, the Service began making regularly scheduled trips to Plum Orchard and the Settlement. Prior to these regularly scheduled trips, the Service personnel made only sporadic visits to these sites. The Court of Appeals concluded that the Wilderness Act "*unambiguously prohibited the Park Service from offering motorized transportation to park visitors through the wilderness area.*" Wilderness Watch, 375 F.3d at 1094.

The Service's position that the tours to Plum Orchard and the Settlement were not inconsistent with the plain language of the Wilderness Act is not reasonably grounded in law or fact. As noted, the Court of Appeals concluded that the language of the Wilderness Act "unambiguously" precluded such tours. Moreover, the purchase of large capacity vans and regularly scheduled trips to these areas belies the Service's claims that the trips to Plum Orchard and the Settlement were no more than was necessary for the maintenance of those areas.

13

### III. Fees and Costs[11]

Once a party has established it was the prevailing party and the Government's position was not substantially justified, the court must then determine what "fees and expenses" are recoverable under the EAJA. When the amount of "fees and expenses" have been determined, the court has the discretion to then reduce the amount awarded to the prevailing party or deny any award, to the extent that the prevailing party has "unduly and unreasonably" protracted the resolution of the case. 28 U.S.C. § 2412(d)(1)(C); Jean, 496 U.S. at 161, 110 S. Ct. at 2320. Finally, "[a] request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437, 103 S. Ct. at 1941.

Plaintiffs assert that they are entitled to attorneys' fees as follows:

|  | Market Rate | EAJA COLA Rate |
|---|---|---|
| D.C. District Ct | $ 48,568.75 | $ 29,662.50 |
| S.D. of Georgia | $117,993.75 | $ 71,130.00 |
| Court of Appeals | $146,657.70 | $ 93,075.00 |
| Fee Litigation | $ 25,275.00 | $ 25,275.00 |
| Total | $338,495.20 | $219,142.50 |

### A. Fees

The "fees" to which prevailing parties are entitled includes a reasonable amount of attorneys' fees to be based upon the market rates for the kind and quality of services performed by the legal counsel. 28 U.S.C. § 2412(d)(2)(A); Meyer v. Sullivan, 958 F.2d

---

[11]Plaintiffs' itemized statements are inconsistent. To the extent possible, the Court has relied upon Plaintiffs' Supplement to their Motion (Dkt. No. 129) which contains the most recent itemized statements.

AO 72A
(Rev. 8/82)

1029, 1033 (11th Cir. 1992). As a cap on the amount of fees to which a party is entitled, the statute provides:

> [A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A).

In determining the amount of attorneys' fees to award, the court begins by calculating the "lodestar" figure. Hensley, 461 U.S. at 433, 103 S. Ct. at 1939. The lodestar figure is determined by multiplying the number of hours reasonably expended times a reasonable hourly rate. Id.; Watford v. Heckler, 765 F.2d 1562, 1568 (11th Cir.1985).

### 1. Reasonable Hourly Rate

Plaintiffs assert that there were no attorneys in the Southern District of Georgia that were willing or able to represent them, and as such, this Court should look to the Atlanta market to determine the prevailing market rate. Although the EAJA has a statutory cap of $125, Plaintiffs aver that the level of expertise required by the attorneys working on this case requires the Court to make an upward adjustment of $125. If the Court should elect not to apply an upward adjustment, Plaintiffs contend that they are entitled to a cost of living increase. (Dkt. No. 115, pp. 14-20.)

Defendants aver that the fact that the market rates are above the statutory cap does not justify a substantial enhancement. Defendants further aver that even if Plaintiffs could establish that this case presented novel and difficult issues, they are not entitled to a substantial enhancement. Next, Defendants contend that the amount of fees sought by

15

Plaintiffs is not "reasonable" in light of the fact that this case did not involve discovery and was decided on cross-motions for summary judgment. Additionally, Defendants assert that this Court should consider the fact that Plaintiffs were only marginally successful in this case. (Dkt. No. 119, pp. 16-20.)

The fee petition submitted by Plaintiffs reflects that the fees "normally charged" by the five attorneys representing Plaintiffs in this case range from $190 to $340 per hour. (Dkt. No. 115, p. 12.) This case involved basic statutory construction and did not require legal counsel with special skill and expertise. Moreover, most of the attorneys in the Southern District of Georgia could have represented Plaintiffs in this case. The EAJA allows for an hourly rate of $125, and Plaintiffs are entitled to a cost of living increase. The Court finds that $150[12] is a reasonable hourly rate for an attorney competent to handle this case.

### 2. Number of Hours

The prevailing party bears the burden of establishing entitlement to the number of hours billed. American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (citing Norman v. House Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th 1988)). When establishing this number, the prevailing party must exercise "billing judgment," which is essentially the duty to exclude "'excessive, redundant, or otherwise unnecessary [hours].'" Id. at 428 (quoting Hensley, 461 U.S. at 434, 103 S. Ct. at 1939-40). When a fee applicant has failed to exercise billing judgment, the court is required to step in and perform this function by reducing the number of hours sought. Id. at 427. The

---

[12]Plaintiffs agree that the appropriate cost of living increase would entitle them to an hourly rate of $150. (Dkt. No. 115, p. 19.)

16

court should exclude those hours billed by the fee applicant that were not "reasonably expended." Hensley, 461 U.S. at 434, 103 S. Ct. at 1939. "[T]he measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." Norman, 836 F.2d at 1306.

Plaintiffs assert that they are entitled to an award of attorneys' fees in the amount of $219,142.50[13], at the COLA rate, for 1461[14] hours. Following a thorough review of Plaintiffs' fee petition and numerous itemized statements, the undersigned recommends that the following reductions be made:

(1) Plaintiffs assert that they are entitled to $29,662.50 for 198[15] hours spent working on the case filed in the District of Columbia. As stated above, Plaintiffs are not entitled to attorneys' fees for time spent on that case. Plaintiffs' award should be reduced by $29,662.50 and 198 hours;

(2) Plaintiffs assert that they are entitled to approximately[16] $8,100 for 54 hours spent researching, drafting, reviewing, revising, discussing, and planning related to the

---

[13]$225,876.62(fees & costs) - $6,734.12(total costs)=$219,142.50

Total costs: District of Columbia $0 + Southern District $3,127.76 + Eleventh Circuit $3,149.16 + Fee Litigation $457.20= $6,734.12

[14]$219,142.50/$150=1461 hours

[15]$29,662.50/$150=198 hours

[16]Plaintiffs' itemized statements are in the form of block-billing which precludes this Court from performing a precise line by line analysis of the charges.

17

filing of their Complaint in this Court. The number of hours billed is excessive.[17] Plaintiffs'

award should be reduced by $4,050.00 and 27 hours;

(3) Plaintiffs assert that they are entitled to $28,157.00 for 188[18] hours spent working

on their motion for a preliminary injunction filed in this Court. The number of hours billed

is excessive[19]. Plaintiffs' award should be reduced by $14,079.00 and 94 hours; and

(4) Plaintiffs assert that they entitled to $1,875.00 for 12.5 hours spent working on

the Supplement to their fee petition.[20] Plaintiffs are not entitled to compensation for this

time. Plaintiffs' award should be reduced by $1,875.00 and 12.5 hours; and

(5) Plaintiffs generally overstaffed the case.[21] Thus, an additional reduction of 10%

is warranted.[22] Plaintiffs' award should be reduced by $16,947.60[23] and 113 hours.

---

[17]Excluding exhibits, Plaintiffs' Complaint is only twenty-five pages in length. (Dkt. No. 1.)

[18]$28,157.00/$150=188 hours

[19]The actual motion is a page and a half and consists of seven sentences. (Dkt. No. 3.) Excluding exhibits and attachments, the memorandum of law submitted in support of the motion is twenty-two pages. (Dkt. No. 4.)

[20]As the prevailing party, Plaintiffs had the burden of showing that they were entitled to the number of hours billed. See Barnes, 168 F.3d at 427. Plaintiffs are not entitled to profit from their failure to provide the Court with an adequate fee petition.

[21]A "court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." Poy v. Boutselis, 352 F.3d 479, 490 (1st Cir. 2003).

[22]For example, Plaintiffs had two law firms representing them: Faegre & Benson, a firm located in Minneapolis, Minnesota, and Stack & Associates, a firm located in Atlanta, Georgia. While the case was before this Court, Faegre & Benson had three attorneys and one paralegal working on the case, and Stack & Associates had two attorneys and one paralegal working on the case. This is excessive in light of the fact that the case did not involve discovery and was decided on two cross-motions for summary judgment.

[23]Reductions done in numbers one through four: $29,662.50 + $4,050.00+$14,079.00+$1,875.00=$49,666.50
Fees sought minus reductions made in numbers one through four: $219,142.50-$49,666.50=$169,476.00

10% of $169,476.00=$16,947.60

AO 72A
(Rev. 8/82)

In sum, Plaintiffs' award for attorneys' fees should be reduced by a total of $66,614.20 and 444 hours. The Court finds that 1,017 hours is a reasonable amount of time for the attorneys to have spent on this case. Plaintiffs are entitled to $152,528.40[24] in attorneys' fees.

### B. Costs

The EAJA allows the prevailing party to recover "fees and other expenses." 28 § U.S.C. § 2412(d)(1)(A); Singleton, 231 F. 3d at 855. "Other expenses" refers to costs incurred for things such as studies, reports, or tests performed for purposes of the litigation which the court finds were "necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(1)(A).

Plaintiffs are seeking reimbursement for costs as follows:

| | |
|---|---|
| D.C. Dist Ct | $0 |
| S.D. of Georgia | $3,127.76 |
| Court of Appeals | $3,149.16 |
| Fee Litigation | $ 457.20 |
| Total | $6,734.12 |

Plaintiffs assert that they are entitled to $1,105.81 for three plane tickets to travel to the Court of Appeals. The tickets were for two attorneys and a party representative. Plaintiffs have failed to establish that the presence of a party representative was

---

[24]$169,476.00 - $16,947.60=$152,528.40

necessary. Plaintiffs' award for costs should be reduced by $368.60[25]. Plaintiffs are entitled to $6,365.52[26] in costs.

## CONCLUSION

For the reasons set forth above, it is my **RECOMMENDATION** that Plaintiffs' Motion For Attorneys' Fees (Dkt. No. 15) be **GRANTED** and Plaintiffs be awarded attorneys' fees in the amount of $152,528.40 and costs in the amount of $6,365.52.

**SO REPORTED** and **RECOMMENDED**, this _6th_ of July, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[25]Plaintiff has not provided the Court with a breakdown of the cost of each flight. The Court will assume that the three flights cost an equal amount. 1/3 of $1,105.81=$368.60

[26]$6,734.12-$368.60=$6,365.52

AO 72A
(Rev. 8/82)